IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUUL YIKALO TIKABO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2197 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] is Defendant United States' ("Defendant") Motion for Summary Judgment (Doc. 21). The court has considered the motion, the response, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

### I. Case Background

Plaintiffs filed this action to review the Food and Nutrition Service's ("FNS") permanent disqualification from participation in the Supplemental Nutrition Assistance Program ("SNAP").[2]

#### A. <u>Food Stamp Benefits</u>

Food stamp benefits in Texas are transferred electronically to

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 13, Ord. Dated Oct. 14, 2016.

[2]     <u>See</u> Doc. 1, Pls.' Compl.

eligible participants in the SNAP program via the Lone Star Card.[3]
After receiving the benefits, a participant can utilize the Lone
Star Card at authorized retailers to pay for eligible food.[4] When
paying for an eligible food item, the participant places the Lone
Star Card into a point-of-sale device and inputs the personal
identification number assigned to the household; the purchase of
the eligible food is then entered by the retailer and sent to a
database.[5] If the food purchase is authorized, the retailer
receives a credit on its account and the participant's account is
debited for the amount.[6] The United States Treasury later moves
the requisite funds into the retailer's account.[7]

**B.** **Investigation and Administrative Process**

On May 3, 2011, Plaintiff Selam Grocery ("Selam Grocery"), a
small store located in a high-rise building, was approved to take
part in SNAP.[8] Plaintiff Luul Tikabo ("Tikabo") owns Selam
Grocery, (collectively, "Plaintiffs") as a sole proprietorship.[9]

---

[3]  See Doc. 21, Def.'s Mot. for Summ. J. p. 1 n.2.

[4]  See id.

[5]  See id.

[6]  See id.

[7]  See id.

[8]  See Doc. 21-1, Ex. 1 to Def.'s Mot. for Summ. J., Admin. R. pp. 9-30, 242.

[9]  See Doc. 25-4, Ex. D to Pls.' Resp., Aff. of Tikabo p. 1.

Selam Grocery is 128 square feet,[10] has one cash register and point-of-sale device, with no back room for storage, no shopping carts or baskets, no scanner, and no counter for placing items during check out.[11] The eligible food at Selam Grocery is limited to select items including ethnic food, dairy products, staple foods, and accessory foods.[12]

After Defendant's computer program revealed that purchases from Selam Grocery could constitute trafficking violations, Defendant analyzed the data and sent an investigator to visit Selam Grocery.[13] The investigation found that "[b]ased on the analysis of transaction data for Salem [sic] Grocery during the period of September, 2015 through November, 2015, we have established clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity."[14]

On January 14, 2016, Tikabo received a letter from the United States Department of Agriculture ("USDA") notifying her that she had been charged with trafficking violations that occurred from

---

[10]    In Plaintiffs' administrative brief, Plaintiffs state that their store is 297 square feet, not 128, but have not provided competent evidence demonstrating that is the case.

[11]    See Doc. 21-1, Ex. 1 to Def.'s Mot. for Summ. J., Admin. R. pp. 29, 55-56, 242.

[12]    See id. pp. 55-59, 242.

[13]    See id. pp. 53-66.

[14]    Id. p. 66.

September to November 2015.[15]  The charge was based on the following

two suspicious circumstances: "an unusual number of transactions

ending in the same cents value" and multiple "excessively large"

transactions.[16]  Tikabo was notified that it was possible to pay a

civil monetary penalty of $59,000 and keep its SNAP authorization

rather than be permanently disqualified if the store sent

documentation to FNS demonstrating that it met the four criteria

listed in 7 C.F.R. § 278.6(i) within ten days of receipt of the

charging letter.[17]

On January 20, 2016, Plaintiffs sent a reply to FNS, stating

that Selam Grocery sold Eritrean and Ethiopian food items, and that

many of their customers were refugees.[18]  Plaintiffs explained the

pricing of certain items and stated that they did not end prices in

ninety-nine cents.[19]  Plaintiffs also attached invoices showing the

purchase of inventory and receipts.[20]

Plaintiffs' reply was considered, and the USDA sent Plaintiffs

a letter on March 2, 2016, informing them that they had been

permanently disqualified.[21]  The USDA explained that Plaintiffs had

---

[15]   See id. pp. 98-100.

[16]   Id. p. 98.

[17]   See id.

[18]   See id. p. 110.

[19]   Id.

[20]   See id. pp. 112-22.

[21]   See id. pp. 123-29.

not supplied evidence of the four criteria set forth in 7 C.F.R. §
278.6(i) to qualify for a civil monetary penalty instead of a
permanent disqualification.[22]  Additionally, the letter notified
Plaintiffs of their right to request a review from the
Administrative Review Branch within ten days of receipt.[23]
Plaintiffs filed a request for review on March 7, 2016.[24]

The final agency decision was issued on June 17, 2016, where
the decision to permanently disqualify Plaintiffs was upheld.[25]
Plaintiffs filed this lawsuit on July 22, 2016.[26]

## II.  Legal Standards

### A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists on any material fact and the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v.
Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a
fact that is identified by applicable substantive law as critical
to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal

---

[22]    See id. p. 128.

[23]    See id.

[24]    See id. p. 132.

[25]    See id. pp. 236-50.

[26]    See Doc. 1, Pls.' Compl.

Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

**B.  Food Stamp Act**

Upon appeal, the district court reviews administrative actions regarding eligibility of participation in the food stamp program de novo. 7 U.S.C. 2023(a)(15); Redmond v. United States, 507 F.2d 1007, 1011 (5th Cir. 1975); see also Maredia v. United States, No. 4:13-CV-1124, 2016 WL 7736585, slip. op. at *3 (S.D. Tex. Aug. 16, 2016)(unpublished); Kingway Supermarkets v. United States, 545 F. Supp.2d 613, 616 (S.D. Tex. 2008); Khan v. United States, Civ. Action No. H-05-0947, 2006 WL 3147331, at *1 (S.D. Tex. Oct. 31,

2006)(unpublished)). The burden is on the plaintiff to demonstrate, by a preponderance of the evidence, that there was no violation of the Food Stamp Act and its corresponding regulations. Maredia, 2016 WL 7736585, at *3. Although review of the FNS's administrative decision is de novo, the court can only set aside the decision if it is "arbitrary and capricious," meaning that it is "unwarranted in law" or "without justification in fact." Id. at *2 (quoting Khan, 2006 WL 3147331, at *1).

### III. Analysis

Plaintiffs were permanently disqualified by FNS upon a finding that the store trafficked in SNAP benefits. Per the regulations, trafficking is "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food . . . ." 7 C.F.R. § 271.2. The penalty for trafficking in food stamps is permanent disqualification. 7 U.S.C. 2021(b)(3)(B); Maredia, 2016 WL 7736585, at *3. A disqualification "shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system." 7 C.F.R. § 278.6.

### A. Defendant's Evidence

Defendant has provided evidence of Plaintiffs' tracking violations, in the form of ALERT data and observations from the

investigator who visited Selam Grocery. Defendant's evidence demonstrates two irregular patterns indicative of trafficking, including an unusual number of transactions ending in the same cents and excessively large transactions.[27]

As to the transactions with the same cents value, the FNS explained that, of the 453 SNAP transactions during the relevant period, ninety-seven or 31.91% ended in .00 cents and 8.22% ended in .50 cents.[28] The FNS stated that because sixty percent of the transactions over $9.00 did not end in .00 or .50, that it was "unlikely that there is a specific pricing structure," especially coupled with the fact that Selam Grocery's inventory focused mainly on single-serving items, except for some large bags of flour and small portions of spices.[29] The FNS found that it was "implausible that several of these relatively inexpensive items purchased together would routinely total to an amount ending in 00 and 50 cents" and that "when many transactions end in a same cents amount, it appears that these transaction amounts are contrived and therefore, in the absence of compelling evidence to the contrary, are suggestive of trafficking.[30]

With regards to the second charge that there were excessively

---

[27]  See Doc. 21-1, Ex. 1 to Def.'s Mot. for Summ. J., Admin. R. pp. 242-47.

[28]  See id. pp. 242-44.

[29]  See id.

[30]  Id. p. 244.

large purchases, FNS stated that there were eighty-one transactions ranging from $45.00 to $300.00, amounts which, at minimum, are 300% higher than average for a store of this type in Texas.[31] These transactions made up sixty-four percent of Plaintiffs' SNAP transactions during the relevant period and totaled $9,477.94.[32] Plaintiffs' average SNAP transaction during this period was $32.92, whereas the average for the relevant category of stores in during the relevant time was only $11.24.[33] In fact, the average SNAP transaction at Selam Grocery was higher than all other types of stores in Texas, including large grocery stores.[34]

The FNS found that "[t]hese large transaction amounts are not consistent with the store's limited inventory. There is no meat and the only fresh produce is some bananas."[35] Defendant's visit to Selam Grocery revealed that the small store had only one cash register and one point of sale device, and no shopping carts, baskets, conveyor belt, counter space, or scanner.[36] In terms of the inventory, Selam Grocery sold (1) no meat, (2) dairy limited to chocolate milk and butter, (3) specialty ethnic foods including

---

[31]    See id. pp. 244.

[32]    See id.

[33]    See id. p. 246.

[34]    See id.

[35]    See id. p. 244.

[36]    See id. p. 242.

9

spices, bread, and flour, (4) limited staple foods, and (5) soda and candy.[37]

Therefore, with this limited inventory and no counter space, shopping carts, or baskets, the FNS concluded that was suspect that a customer would spend hundreds of dollars on items at this store. Overall, FNS found that "the store's layout, business structure, and food inventory do not support a high percentage of transactions markedly exceeding the average SNAP transaction amount of similar type stores."[38]

## B. **Plaintiffs' Response**

Plaintiffs contend that Defendant has not submitted admissible evidence showing that they trafficked in food stamps. Specifically, Plaintiffs argue that the ALERT system data is unreliable and inadmissible without expert opinion. Plaintiffs also challenge Defendant's failure to disclose the names of all households associated with suspect transactions.

Plaintiffs argue that summary judgment should be denied because Defendant "failed to provide Plaintiffs with the identifies [sic] of the SNAP recipients whose transactions [Defendant] has labeled suspicious," citing Han v. FNS, 580 F. Supp. 1564 (D. N.J. 1984).[39]

---

[37]    See id.

[38]    See id. p. 247.

[39]    See Doc. 25, Pls.' Resp. p. 27.

However, Plaintiffs misconstrue the statements made in <u>Han</u>. The court denied summary judgment in <u>Han</u>, not because the United States did not disclose the names of the SNAP recipients, but because it would not disclose "the identities of the investigators and private citizens assisting the investigation who made the purchases in issue." <u>Han</u>, 580 F. Supp. at 1568. Here, Plaintiffs are not seeking the identity of the investigating witness; rather, they are seeking all the identities of persons who made a suspicious transaction.

Plaintiffs contend that Defendant's evidence is improper because there is nothing demonstrating the accuracy of its statistical conclusions and that Defendant was required to provide expert testimony to support these conclusions. Essentially, Plaintiffs' arguments attempt to challenge the statistical conclusions reached by Defendant through the utilization of the ALERT system.

Plaintiffs' submitted evidence does not support a conclusion that the ALERT system was unreliable in their case. Plaintiffs attempt to attack the system as a whole, submitting a report from the Office of the Inspector General stating that the ALERT system and STARS system[40] had "different monthly transaction totals" for 241 retailers.[41] Plaintiffs also submitted a 2016 fiscal year

---

[40] This is another data collection tool used by the SNAP program.

[41] <u>See</u> Doc. 25, Pls.' Resp. p. 27.

report for the SNAP program, a deposition from another SNAP termination case of an ALERT system manager, and an affidavit from Tikabo. Tikabo's affidavit generally explains the store's pricing, but does not address any of the specific suspect transactions in this case or provide any new information that was not presented to the administrative agency.[42] None of this evidence, other than Tikabo's affidavit, seems to be connected to the facts of this specific case.

Congress explicitly granted the FNS the power to consider "evidence obtained through a transaction report under an electronic benefit transfer system." 7 U.S.C. § 2021(a)(2). Additionally, this electronic benefit transfer system data is often utilized by courts to uphold permanent disqualification decisions. See Kingway, 545 F. Supp.2d at 617 ("Courts have upheld a store's disqualification from the food stamp program based on an analysis of electronic benefit transfer system data."); Idias v. United States, 359 F.3d 695, 698 (4th Cir. 2004)("There can also be little question that the United States was entitled to use [electronic benefit transfer data] to prove that [the plaintiff] trafficked in food stamps."); Saleh v. United States, No. 02-C-8846, 2004 WL 549457, at *1-3 (N.D. Ill. Mar. 19, 2004)(unpublished); Kahin v.

---

[42]    For example, in the brief submitted by Plaintiffs' counsel to the agency in the administrative review process, Plaintiffs' attorney discusses many of the same facts that are stated by Tikabo in her affidavit, including the types of products that the store has, that it catered to Eritrean and Ethiopian customers, and Plaintiffs' prices of teff, barley, and sorghum. See Doc. 21-1, Ex. 1 to Def.'s Mot. for Summ. J., Admin. R. pp. 188-90.

United States, 101 F. Supp.2d 1299, 1303-04 (S.D. Cal. 2000); Maredia, 2016 WL 7736585, at *4 ("numerous cases and circuits have upheld disqualification based on [sic] an EBT analysis similar to the case at hand.")(citing cases); Young Choi, Inc. v. United States, 639 F. Supp.2d 1169, 1178 (D. Haw. 2009)("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site store surveys."); Duchimaza v. United States, 211 F. Supp.3d 421, 432-33 (D. Conn. 2016)("[T]he Government may permanently disqualify a retailer on the basis of EBT data."). In fact, "the law is clear that a court may grant the [United States'] motion for summary judgment based on evidence from transaction reports." Maredia, 2016 WL 7736585, at *5 (citations and internal quotations omitted).

Additionally, FNS looked to other sources to determine that Plaintiffs trafficked in food stamps. "[T]he ALERT system does not randomly flag transactions; it is programmed to identify transactions following patterns that analysts have determined are indicative of trafficking. And those transactions are then investigated." Maredia, 2016 WL 7736585, at *4 (quoting Nasunin v. United States, No. 3:10-CV-00277-SLG, 2013 WL 1687730, at *7 (D. Alaska Apr. 17, 2013)(unpublished)). In this case, Defendant conducted an investigation before Plaintiffs were permanently disqualified. After suspicious transactions were found by the electronic system, data from Selam Grocery was then "selected and

analyzed."[43]  Additionally, an in-store investigation was performed to "obtain updated information of [Selam Grocery's] current inventory and layout."[44]  Therefore, Plaintiffs' contention that it was improper to rely on ALERT data is without merit.

As to Plaintiffs' argument that an expert report was required to support such data, the court agrees with the assertion in <u>Maredia</u> that no such expert report is required to support the ALERT data or analysis resulting from such data.  2016 WL 7736585, at *5 ("This Court knows of no other court that requires an expert affidavit for the use of the ALERT data or the analysis thereof. This Court has in the past accepted such data as sufficient and this Court will not deviate from its prior rulings.").

Plaintiffs also challenge the affidavit of Shanta Swezy ("Swezy") submitted in support of the summary judgment evidence that attests to the authenticity of the administrative record. Plaintiffs contend that this affidavit is unsupported by personal knowledge and is inadequate to support Defendant's statistical conclusions in the administrative record.

Swezy is the Chief of the Administrative Review Branch of the Retailer Policy and Management Division.[45]  In this role, Swezy supervised the administrative review officer who made the final FNS

---

[43]     <u>See</u> <u>id.</u> p. 53.

[44]     <u>See</u> <u>id.</u> p. 55.

[45]     <u>See</u> Doc. 21-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Swezy ¶ 1.

determination in this case.[46]  Swezy stated that she was "the designated custodian of records in this matter" and that upon reviewing over the attached administrative record, she averred that it "is a true and correct copy of said administrative appeal record."[47]  Courts have found that such affidavits are a proper method to authenticate the administrative record in other food stamp benefit cases.  See Maredia, 2016 WL 7736585, at *5; Kinqway, 545 F. Supp.2d at 618 ("[A] declaration is a sufficient predicate to authenticate the records.").  Swezy's affidavit is based on her personal knowledge and properly supports the authenticity of the administrative record in this case.  As Swezy is not attesting to the validity of the statistical conclusions, Plaintiffs' argument is without merit.

The other evidence Plaintiffs submitted in the administrative proceeding included several invoices demonstrating that certain items were purchased for the store, pictures of the store, agency reports about redemption of SNAP benefits, a page containing five receipts, census data about Plaintiffs' zip code, and a USDA report about SNAP households in Texas' 18th Congressional District.  However, none of this data provides plausible explanations for why the relevant transactions were not suspect.

In order to set aside the administrative decision, "[a]

---

[46]    See id.

[47]    Id. ¶¶ 2-3.

plaintiff must demonstrate that each violation was not trafficking; general allegations will not suffice." Mansi v. U.S., 2013 WL 1189709, at *4 (W.D. Mo. Mar. 22, 2013)(citing Kahin, 101 F. Supp.2d at 1303). A plaintiff has the burden of raising a genuine issue of material fact "as to each of the transactions set forth as suspicious by the FNS." Sharif v. United States, Civ. Action No. 4:16-CV-67-JMV, 2017 WL 58837, slip op. at *5 (N.D. Miss. Jan. 5, 2017)(unpublished)(quoting Kahin, 101 F. Supp.2d at 1303).

Plaintiffs have not met their burden in this case, as they have no evidence that the violations were not instances of trafficking. Instead, they have focused their arguments on attacking the validity of the ALERT system, which the law clearly allows the FNS and courts to rely on when considering if trafficking occurred. Tikabo's generalized statements in her affidavit do not demonstrate that each trafficking violation did not occur. Therefore, FNS's determination that Selam Grocery should be permanently disqualified from receiving SNAP benefits was not arbitrary or capricious.[48]

## C. **Due Process**

Plaintiffs also bring a due process claim relating to the administrative process and Defendant's use of a computer program.

---

[48] Plaintiffs' response also includes arguments about Defendant's failure to produce discovery beyond the administrative record. However, as Plaintiffs have not timely filed a motion to compel production of documents, the court deems this issue waived.

16

Plaintiffs' claim is characterized as a substantive due process claim, but it also raises issues of procedural due process as they complain about the process utilized to terminate their SNAP authorization. Defendant argues that there was no due process violation because it followed the agency's due process procedures and policies.

With regard to Plaintiffs' substantive due process challenge, because the SNAP regulations do not involve any fundamental right, the regulations only must past rational basis scrutiny. Razzak v. United States, No. A-13-CA-207-SS, 2014 WL 582079, at *5 (W.D. Tex. 2014)(citing Malagon de Fuentes v. Gonzales, 462 F.3d 498, 505 (5th Cir. 2006). Under rational basis scrutiny, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Duchimaza, 211 F. Supp.3d at 440 (quoting Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)).

SNAP exists to "alleviate . . . hunger and malnutrition" in "low income households" and "prevention of illegal activity within the Program is a legitimate government purpose." 7 U.S.C. § 2011; Lugo v. United States, No. 08 Civ. 2960(RJS), 2009 WL 928136, at *4 (S.D.N.Y. Mar. 30, 2009)(unpublished). Therefore, courts have found that the SNAP disqualification process complies with substantive due process requirements. See, e.g., Hanif v. United

<u>States</u>, Civ. Action No. H-15-2718, 2017 WL 447465, slip op. at *7 (S.D. Tex. Feb. 2, 2017)(unpublished); <u>Razzak</u>, 2014 WL 582079, at *5; <u>Traficanti v. United States</u>, 227 F.3d 170, 175 (4th Cir. 2000)("[W]e hold that the statute's strict liability regime is rationally related to the government's interest in preventing fraud").

Plaintiffs complain about the administrative process utilized in the termination of their SNAP authorization; however, "once a participant seeks review de novo, the adequacy of the administrative process as an abstract matter is no longer important." <u>Haskell v. United States Dep't of Agric.</u>, 930 F.2d 816, 820 (10th Cir. 1991)(quoting <u>McGlory v. United States</u>, 763 F.2d 309, 311-12 (7th Cir. 1985)). Because the regulations allow for administrative review, and review by a court de novo, the regulations comply with the procedural due process component of the due process clause. <u>Id.</u> at 819-20; <u>Razzak</u>, 2014 WL 582079, at *5 (citing <u>Kim</u>, 121 F.3d 1269, 1274 (9th Cir. 1997); <u>TRM, Inc. v. United States</u>, 52 F.3d 941, 947 (11th Cir. 1995); <u>Spencer v. United States</u>, 142 F.3d 436, 1998 WL 96569, at *3 (6th Cir. 1998)(unpublished)). There is no evidence raising an issue of material fact that Defendant strayed from the process set forth in the regulations. Therefore, Plaintiffs' due process claims fail as a matter of law.

**D. <u>Rule 56(d)</u>**

18

In the last paragraphs of their motion for summary judgment, Plaintiffs move for relief under Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny or defer considering the motion or allow time for discovery. Fed. R. Civ. P. 56(d). Plaintiffs contend that they "are unable to fully present facts essential to justify their position" because: (1) Defendant did not respond to Plaintiffs' requests for production and (2) Plaintiffs seek to depose an expert in data analysis, an ALERT administrator, a USDA analyst, the signatory on Plaintiffs' disqualification letter, and possibly "yet-to-be-identified SNAP participants."[49]

Plaintiffs seek eight categories of information in their requests for production, including: (1) data and information supporting the charging letter; (2) all records pertaining to Plaintiffs' participation in the SNAP program; (3) Plaintiffs' entire EBT history; (4) EBT data for comparator stores utilized in the investigation; (5) household data for households identified in the charging letter; (6) copies of the program or algorithm used to support the charging letter; (7) final agency decisions from other stores from November 11, 2015 to present; and (8) any other information pertaining to the permanent disqualification of Plaintiffs.

---

[49]     See Doc. 25-5, Ex. E to Pls.' Resp., Rule 56(d) Decl. pp. 1-2.

In its reply, Defendant explains that it did comply with Plaintiffs' request for production, attaching its responses to the reply. As to requests one, two, and eight, Defendant explained that it turned over any responsive documents to these requests in its initial disclosures. Regarding requests three and seven, Defendant objects on the basis that these requests are overly broad and irrelevant. Defendant contends that disclosing request six would hinder the agency's ability to investigate fraud in the SNAP program. As to requests for production four and five, Defendant contends that they concern unrelated third parties to the case.

In Plaintiffs' reply, they contend that there are more records, stating that "simply by looking at the administrative record, [Plaintiffs] are aware of additional documents the Defendant failed to provide."[50] The parts of the administrative record that Plaintiffs discuss talk about data, including patterns, data from the ALERT system, or household data that Defendant utilized in determining that Plaintiffs had trafficked in food stamps.

For a party to mandate relief under Rule 56(d), the party must show "both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence." Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 719 (5th Cir. 1999).

---

[50]    See Doc. 27, Pls.' Reply p. 2.

Plaintiffs have failed to demonstrate that any discovery would aid in their opposition to summary judgment.  Notably, since filing the Rule 56(d) request on February 17, 2017, Plaintiffs never filed a motion to compel in this case.  Instead, the Rule 56(d) request is buried in the motion for summary judgment.

As to Plaintiffs' request six seeking proprietary information the ALERT program's algorithms, the court has explained that Congress gave Defendant the power to rely on this data in making its determination, and Defendant utilized an investigation, in addition to the electronic data.  Defendant stated that requests one, two, and eight all have been fulfilled.  Three, four, five, and seven, are overly broad and concern unrelated parties. Plaintiffs' burden in these cases, at summary judgment, is to show how each violation was not an instance of trafficking.  Seeking information about other stores, SNAP data outside the relevant time range, and personal information about households who purchased from Plaintiffs' store will not demonstrate how these violations were not instances of trafficking.  Plaintiffs appear to be utilizing these broad discovery requests to distract the court from their burden of disproving the trafficking violations.  They do not meet their burden by attacking the computer algorithm utilized to identify patterns of trafficking.  Therefore, the court finds that Plaintiffs are not entitled to a Rule 56(d) continuance.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of August, 2017.

_____
U.S. MAGISTRATE JUDGE